A148303 and A149021 argued and submitted individually October 9, 2012; in A148303, on petition, remanded for an award of a penalty under ORS 656.262(11)(a) for employer's unreasonable delay in the acceptance of claimant's "major depression and panic disorder," affirmed on cross-petition; in A149021, affirmed on petition, reversed on cross-petition for assessment of a penalty under ORS 656.268(5)(e) and an attorney fee under ORS 656.382(1), for employer's unreasonable resistance to payment of compensation November 19; petitioner's petition for reconsideration in A149021 filed December 3, and respondent's response to petition for reconsideration in A149021 filed December 9, 2014, allowed by opinion February 25, 2015
See 269 Or App 404, 344 P3d 1115 (2015)

In the Matter of the Compensation of
Joy M. Walker, Claimant.

Joy M. WALKER,
*Petitioner*
*Cross-Respondent,*

*v.*

PROVIDENCE HEALTH SYSTEM OREGON,
*Respondent*
*Cross-Petitioner.*

Workers' Compensation Board
0904145, 0902065; A148303

In the Matter of the Compensation of
Joy M. Walker, Claimant.

PROVIDENCE HEALTH SYSTEM OREGON,
*Petitioner*
*Cross-Respondent,*

*v.*

Joy M. WALKER,
*Respondent*
*Cross-Petitioner.*

Workers' Compensation Board
1000400, 1000401; A149021

340 P3d 91

In A148303, Ronald A. Fontana argued the cause and filed the briefs for petitioner-cross-respondent.

In A148303, Theodore P. Heus argued the cause for respondent-cross-petitioner. With him on the briefs was Scheminske & Lyons, LLP.

In A149021, Theodore P. Heus argued the cause for petitioner-cross-respondent. With him on the briefs was Scheminske & Lyons, LLP.

In A149021, Ronald A. Fontana argued the cause for respondent-cross-petitioner. With him on the briefs was Ronald A. Fontana, P.C.

Before Nakamoto, Presiding Judge, Haselton, Chief Judge, and Wollheim, Senior Judge.

WOLLHEIM, S. J.

**WOLLHEIM, S. J.**

This workers' compensation case involving a mental stress claim has a long and convoluted history, and has resulted in three decisions by this court to date, *Walker v. Providence Health System Oregon*, 254 Or App 676, 298 P3d 38, *rev den*, 353 Or 714 (2013) (*Walker III*); *Providence Health System v. Walker*, 252 Or App 489, 289 P3d 256 (2012), *rev den*, 353 Or 867 (2013) (*Walker II*); *Joy M. Walker*, 58 Van Natta 11 (2006), *aff'd without opinion, Providence Health Systems v. Walker*, 210 Or App 466, 151 P3d 960 (2007) (*Walker I*). With this opinion, we add another decision to the list.[1]

We summarize the litigious procedural history of this case as it pertains to the issues raised in the two petitions for judicial review addressed in this opinion. Claimant was wrongfully disciplined at work in April 2004, after which she began to suffer symptoms of mental stress, including panic attacks, anxiety, chest pains, and headaches. In May 2004, claimant's employer, Providence Health System Oregon (employer), denied a claim for "stress/anxiety," and claimant requested a hearing. In July 2004, claimant's attending physician, Dr. Friedman, a psychiatrist, examined claimant and completed a report offering the opinion that claimant was suffering from a work-related condition, which she diagnosed as "major depression, single episode," and "panic disorder without agoraphobia." In October 2004, Friedman determined that claimant was medically stationary as of August 19, 2004, with ongoing medication management and no permanent impairment.

An administrative law judge (ALJ) and then the Workers' Compensation Board set aside employer's denial of claimant's mental stress claim and ordered it accepted, and this court affirmed the board's order without opinion on January 3, 2007, in *Walker I*.

---

[1] As explained in further detail herein, in A148303, claimant has filed a petition for judicial review and employer has filed a cross-petition for review of a Workers' Compensation Board order issued March 15, 2011. In A149021, employer has filed a petition for judicial review and claimant has filed a cross-petition for review of a board order of June 8, 2011. The petitions and cross-petitions for judicial review in A148303 and A149021 are consolidated for purposes of this opinion only.

On July 24, 2007, employer accepted a claim for "disabling anxiety with depression." On August 13, 2007, after three additional years of treating claimant, Friedman modified her diagnosis, opining that claimant suffers from "major depression recurrent in remission with treatment and panic disorder without agoraphobia," with permanent impairment. Friedman included detailed impairment findings, determining that claimant was medically stationary as of August 13, 2007, the date of the report. On August 20, 2007, claimant requested a modification of the acceptance of the claim to include as omitted conditions "major depression and panic disorder without agoraphobia as diagnosed by Dr. Friedman in July 2004[.]"

Employer requested and obtained two independent medical evaluations (IMEs). Dr. Wicher agreed with Friedman's diagnosis of major depressive disorder, but did not think that claimant had a panic disorder and opined that claimant was not suffering from any currently active mental stress disorder. Wicher also opined that claimant's depressive disorder was not work related. Dr. Glass examined claimant and also agreed with Friedman's diagnosis of major depressive disorder, recurrent and in remission, but Glass did not agree with Friedman that claimant suffered from panic disorder, and agreed with Wicher that claimant's depressive disorder was not work related and caused no impairment.

On October 19, 2007, employer declined claimant's request to amend the notice of acceptance to include "major depression and panic disorder without agoraphobia" as omitted conditions. Employer explained that "[i]nformation received indicates that your major depression and panic disorder did not arise out of your accepted condition nor in the course of your employment with Providence Health System."

On October 29, 2007, and again on January 28, 2008, Friedman reiterated her prior diagnoses and did not concur in the opinions of Wicher and Glass. On January 30, 2008, employer issued an updated notice of acceptance which described the accepted conditions as "disabling anxiety and depression," with a medically stationary date of August 19,

2004, and closed the claim with no award of permanent partial disability.

Claimant requested reconsideration by the Appellate Review Unit (ARU), seeking a medically stationary date of August 13, 2007, and the assessment of a penalty under ORS 656.268(5)(e); but she did not request a medical arbiter exam. Friedman reiterated her findings in a report of February 22, 2008, and a deposition of March 4, 2008. The reconsideration process was limited to the then-accepted condition of "disabling anxiety with depression," and therefore did not address the denied condition of "major depression and panic disorder without agoraphobia." The ARU adopted Friedman's recommendations, determined a medically stationary date of August 13, 2007, and ordered an award of 35 percent unscheduled permanent partial disability, as well as a penalty under ORS 656.268(5)(e) (authorizing penalty of 25 percent of all compensation due when, on reconsideration, the director orders an increase of 25 percent or more of the amount of compensation due the worker and the worker is found to be at least 20 percent permanently disabled).

Employer challenged the order on reconsideration. The ALJ and, ultimately, the board, overturned the 35 percent disability award. Although the board did not find fault in Friedman's rating of impairment, the board explained that an award of impairment must result from a *compensable* injury or disease. ORS 656.214(1)(c)(A); OAR 436-035-0007(1). Friedman had rated claimant's impairment for the conditions of "major depression and panic disorder without agoraphobia," both of which had been denied at the time of the request for reconsideration. The board determined that, because only claimant's anxiety and depression had been accepted at the time of the order on reconsideration, only those conditions could be rated. Because there was no evidence rating impairment for those conditions, the board overturned the ARU's award of 35 percent permanent partial disability. However, the board upheld the medically stationary date of August 13, 2007.

In the mean time, claimant had filed a request for hearing on employer's denial of her omitted medical condition claim for major depression and panic disorder and,

in an order of September 9, 2008, ALJ Mills set aside that denial. After ALJ Mills's order, claimant requested claim closure, but employer had appealed ALJ Mills's order to the board and refused to close the claim, stating that no further processing would occur until there had been a final determination on ALJ Mills's order. Claimant requested a hearing on that refusal to close and, in an order of March 2, 2010, the board found that employer had unreasonably refused to close the claim and awarded a penalty under ORS 656.268(5)(d), to be based on the compensation determined to be due at claim closure, and a related attorney fee under ORS 656.382(1).

In an order of March 23, 2009, relating to employer's appeal of ALJ Mills's order, the board determined that employer was barred by issue preclusion from challenging the compensability of claimant's major depression and panic disorder, reasoning that the compensability of those conditions had been considered and finally determined in the litigation of claimant's original mental stress claim, terminating with this court's decision (without opinion) in *Walker I*. Thus, the board set aside employer's denial of claimant's omitted medical condition claim for "major depression and panic disorder," and ordered processing of the claim.

On March 25 and March 31, 2009, claimant's attorney filed requests for claim closure, based on Friedman's findings of impairment dating from her report of February 22, 2008, and deposition of March 4, 2008. On April 8, 2009, employer issued a notice of refusal to close the claim, stating that it needed an IME to determine the extent of any permanent impairment associated with claimant's accepted conditions. On April 13, 2009, claimant filed a request for hearing, seeking a penalty and attorney fees based on employer's refusal, as of April 8, 2009, to close the claim in response to claimant's requests for claim closure.

Meanwhile, on April 10, 2009, in response to the board's order of March 23, 2009, employer had issued a modified notice of acceptance, accepting a claim for "disabling anxiety and depression and *acute* major depression and panic disorder." (Emphasis added.)

On April 14, 2009, claimant's attorney wrote to employer's attorney, complaining that the modified notice of acceptance was not consistent with the board's order:

"I object to the acceptance of claimant's condition as '*acute* major depression and panic disorder' which would appear to be yet another attempt by [employer] to accept less than the actual condition diagnosed by Dr. Friedman which the Board has twice ordered [employer] to accept. In order to comply with existing orders, please see that [employer] issues an amended acceptance to include 'major depression and panic disorder' as previously requested and ordered."

Claimant also complained about employer's request for an IME:

"I also object to [employer's] 4/9/2009 notice of purported 'mandatory closing exam' to have psychologist Jack Davies supposedly evaluate claimant's permanent impairment. As you know, pursuant to ORS 656.245(2)(C), only the attending physician may make findings of a worker's impairment for purposes of evaluating the worker's disability. As you know, Dr. Friedman has already issued detailed reports containing her findings on the extent of claimant's impairment and you have already cross-examined her about her reports and opinions. The Department long ago determined that Dr. Friedman's existing reports constituted sufficient information to determine the extent of claimant's permanent disability and that it determined claimant was due 35% permanent partial disability based on Dr. Friedman's findings. There really seems to be no reasonable basis for arguing that her findings are somehow insufficient information on which to base the often requested Notice of Closure. The Appellate Review Unit and Dr. Friedman both rejected the purported findings of no impairment by [employer's] earlier examiners, Drs. Glass and Wicher. Unless Dr. Davies were somehow to deviate from what I have observed in decades of practice, Dr. Davies can be expected to do what he usually does which is to opine that the injured worker has no impairment from any work related mental disorder and that any impairment she may have is due to pre-existing or other non-work related conditions. There is no reason to believe that Dr. Friedman would find Dr. Davies' predictable view of no impairment to be more accurate than her own view developed with the benefit of more than four

and one-half years of treating this claimant for her major depression and panic disorder."

Claimant filed with the Department of Consumer and Business Services (department) an "Objection to Notice of Acceptance" of "acute" major depression, stating that it "would appear to be yet another attempt by [employer] to accept less than the actual condition diagnosed by Dr. Friedman and which the Board has twice ordered [employer] to accept." On April 14, 2009, claimant also again requested issuance of a notice of closure and acceptance of an omitted condition of "major depression and panic disorder."

Over claimant's objection, employer scheduled an IME for claimant with Davies, a psychologist, on April 28, 2009.[2] On the instruction of her attorney, claimant did not attend. Claimant's attorney advised employer that, pursuant to ORS 656.245(2)(b) and (c), only the attending physician could make findings of impairment and that there was no legitimate reason why employer could not close the claim based on Friedman's reports.

On April 23, 2009, claimant's attorney again wrote to employer, requesting claim closure and asserting that, if employer believed that it needed updated information, it could request it from Friedman. Employer sought an order from the department authorizing it to suspend claimant's benefits based on her failure to attend the IME scheduled for April 28, 2009, but the department denied that request on procedural grounds.

On June 2, 2009, employer notified claimant of a rescheduled IME with Davies on June 15, 2009. The notice advised claimant that the purpose of the exam was to evaluate claimant's permanent impairment, that her attendance

---

[2] Employer's letter to Davies described the purpose of the examination:

"It is employer's belief that claimant suffered no residual permanent impairment as a result of the stress claim of April 2, 2004, as evidenced by claimant's ability to return for more than two years to her regular employment, functioning in the same capacity under the same management. The notes of Dr. Friedman indicate claimant has had significant personal problems unrelated to the industrial injury. Employer believes that any residual impairment is attributable to those personal issues. Drs. Glass and Wicher have agreed with this previously. Dr. Friedman has not. This examination has been scheduled for purposes of trying to sort out those issues."

was mandatory, and that her failure to attend would result in a suspension of benefits.

On June 11, 2009, claimant's attorney wrote to employer again advising that claimant would not attend the IME with Davies, because Davies was not a physician who was authorized to conduct IMEs pursuant to ORS 656.325, and requesting claim closure.

On June 25, 2009, claimant filed a second request for hearing, relating to employer's processing of the claim subsequent to the modified notice of acceptance, and raising issues of *de facto* denial, partial denial after claim acceptance, refusal to accept "major depression and panic disorder"; and penalties and attorney fees pursuant to ORS 656.262 and ORS 656.382.

Meanwhile, on June 16, 2009, employer had requested that the director of the department suspend claimant's benefits based on her failure to attend the June 15 IME and, on July 6, 2009, the director's Compliance Section issued an "Order Suspending Compensation Pursuant to ORS 656.325." The Compliance Section determined that employer was authorized to schedule an IME as part of its processing of the newly claimed conditions of major depression and panic disorder. The Compliance Section considered and rejected claimant's contention that the IME was not authorized because Davies was not a medical service provider on the director's list of authorized providers. The Compliance Section's order concluded that claimant's explanation for her failure to attend the June 15, 2009, IME was unreasonable and that "suspension of the worker's compensation benefits is warranted pursuant to ORS 656.325 and OAR 436-060-0095." The Compliance Section's order concluded that the appropriate effective date for the suspension of claimant's benefits was the date claimant failed to attend the June 15, 2009, IME. The order provided:

> "It is THEREFORE ORDERED that [employer] be granted consent to suspend the worker's compensation benefits as of June 15, 2009.
>
> "*The suspension shall continue until such time as the worker has notified insurer of agreement to be examined*

*and, in fact, submits to an examination by a physician designated by them.*

"If the worker has not made an effort to have compensation benefits reinstated within 60 days of the date of this order, the insurer may close the claim. *This order will then terminate upon closure of the claim.*"

(Emphasis added.)

On July 22, 2009, claimant requested a hearing contesting the order of suspension and requesting that that hearing request be consolidated with the two prior hearing requests. The board agreed to consider claimant's July 22, 2009, hearing request together with the June 25, 2009, request (relating to employer's issuance of the modified notice of closure), and an April 13, 2009, request (relating to employer's refusal to close the claim on April 8, 2009). It ultimately resolved the issues arising out of those hearing requests in its March 15, 2011, order, of which claimant seeks judicial review and employer cross-petitions for review in A148303.

On November 5, 2009, before the case was submitted to the ALJ on the written record, employer issued an acceptance of major depression (minus the "acute" qualifier) and panic disorder. On that date, employer also issued a notice of closure, determining that claimant was not entitled to permanent partial disability. Claimant requested reconsideration of that notice of closure.

On January 13, 2010, the ARU issued an order on reconsideration of the November 5, 2009, notice of closure, determining that claimant was entitled to an unscheduled permanent partial disability award of 35 percent for her major depression and panic disorder, and ordering employer to pay claimant benefits of $27,184.[3] Employer requested a hearing, contending that the ARU had improperly ordered

---

[3] That is the same award that had been made by the ARU on March 26, 2008, but which the board had subsequently overturned for the reason that the diagnoses of "major depression and panic disorder" were not yet accepted. As previously explained, in its order of March 23, 2009, the board had ordered employer to accept those conditions as having been previously litigated. Thus, although technically in denied status, the compensability of claimant's "major depression and panic disorder" had been litigated favorably to claimant at the time of Friedman's initial opinion of impairment.

payment of compensation while the suspension of claimant's benefits remained in effect. In its order of June 8, 2011, the board upheld the award, explaining that, under the statutory scheme and pursuant to the Compliance Section's notice of suspension, the suspension order terminated at claim closure because, after claim closure, employer was no longer entitled to the suspension's objective—to require claimant to attend the IME with Davies.

Citing ORS 656.268(7)[4] and OAR 436-060-0095(3), the board explained in its order of June 8, 2011, that the suspension of claimant's benefits necessarily depended on employer's right to an IME for the purpose of determining impairment in preparation for claim closure but that, when employer closed the claim, it no longer had a right to the IME. After claim closure, the board reasoned, employer was required to rely on the attending physician's rating of impairment, ORS 656.245(2)(b)(C). If employer had an objection to the impairment rating based on the attending physician's rating, it must nonetheless close the claim based on the attending physician's rating and then request a medical arbiter's examination. In other words, the board reasoned, claimant having refused to attend the IME during the period of suspension of benefits, employer was required to close the claim based on the attending physician's impairment ratings and then seek reconsideration and an examination by a medical arbiter. In A149021, employer seeks judicial review of the June 8, 2011, order, and claimant cross-petitions for judicial review.

Having summarized the procedural facts, we address the issues raised in the petition and cross-petition for judicial review in A148303, relating to the board's March 15, 2011, order and claimant's hearing requests of April 13, 2009, June 25, 2009, and July 22, 2009:

*April 13, 2009, Request For Hearing*

The April 13, 2009, request for hearing related primarily to employer's failure to close the claim in response to claimant's March 25 and March 31, 2009, written requests

---

[4] ORS 656.268(7), relating to suspension of benefits, has subsequently been renumbered ORS 656.268(8).

for claim closure, and employer's April 8, 2009, notice of refusal to close the claim, after the board's March 23, 2009, order determining that employer was required to accept claimant's omitted-condition claim for "major depression and panic disorder."

In its March 15, 2011, order, the board concluded that employer's refusals to close the claim in response to claimant's requests for closure on March 25 and March 31, 2009, did not warrant a penalty, because employer's refusals to close the claim was not unreasonable. The board explained that under ORS 656.325(1)(a), employer was entitled to request an IME with Davies for more updated information before closing the claim. Thus, the board concluded that claimant was not entitled to a penalty under ORS 656.268(5)(d) (refusal to close claim) or related attorney fees under ORS 656.382(1), for an unreasonable delay or unreasonable resistance to payment of compensation in failing to close the claim as requested by claimant on March 25 and March 31, 2009.

Claimant asserts in her third assignment of error in A148303 that the board erred in rejecting her contention that employer unreasonably refused to close the claim in response to claimant's March 25 and March 31, 2009, requests for closure and, further, that the board, having previously determined that employer's refusal to close the claim was unreasonable, was not free to reach a different result.

We reject claimant's contention and rewind briefly to fill in a procedural detail. As noted, after ALJ Mills's order of September 9, 2008, determining that claimant's omitted-condition claim for "major depression and panic disorder" was compensable, claimant requested once again that employer accept claimant's "major depression and panic disorder" as an omitted condition. Employer had appealed ALJ Mills's order to the board and, pending that appeal, claimant had filed a request for hearing, seeking penalties and attorney fees for employer's failure to process the omitted-condition claim. An ALJ, in an order of June 11, 2009, and then the board, in an order of March 2, 2010, held that, pending employer's appeal of ALJ Mills's order, employer was required to reopen and process claimant's

omitted-condition claim. The board thus ordered employer to pay a penalty under ORS 656.268(5)(d), for an unreasonable refusal to close the omitted-condition claim, attorney fees under ORS 656.262(11)(a), for unreasonable claim processing, and attorney fees under ORS 656.382(1), for an unreasonable resistance to payment of compensation. On employer's petition for judicial review, in *Walker II*, decided after the briefing in this case, this court reversed in part the board's order of March 2, 2010, and held that, although, having been ordered by ALJ Mills to accept the omitted-condition claim, employer had an obligation to reopen and process the claim, pending appeal and review of ALJ Mills's order, employer had a legitimate doubt as to its obligation to reopen and process the claim. Thus, this court held that employer was not subject to a penalty and attorney fees for its failure to process claimant's omitted-condition claim pending the outcome of employer's appeal of ALJ Mills's order, and that the board erred in awarding a penalty and attorney fees based on the failure to process the omitted-condition claim pending appeal of ALJ Mills's order. 252 Or App at 507. Our opinion in *Walker II* disposes of claimant's contention here in her third assignment of error that, having determined in its order of March 2, 2010, that employer had unreasonably refused to close claimant's omitted-condition claim pending appeal of ALJ Mills's September 8, 2008, order, the board was precluded from determining in the order on review here that employer did not unreasonably refuse to close the claim after the order of March 23, 2009.

In her first assignment of error in A148303, claimant asserts that the board erred in its March 15, 2011, order in relying on the requested IME as the basis for its conclusion that employer's refusal to close the claim was not unreasonable, because the IME was not "reasonably requested," as required by OAR 436-060-0095(1). In claimant's view, employer pursued the IME for an abusive and improper purpose: to obtain an additional medical opinion in opposition to Friedman's opinion that claimant's impairment is connected to her work, when employer was aware that Friedman would not concur in that additional medical opinion and, therefore, it could not be used in rating claimant's impairment.

    In view of the medical record in this case and the fact that claimant had been medically stationary since August 2007, we are skeptical that yet another medical opinion would have shed new light on the question of claimant's work-related impairment.[5] But, as the board correctly noted in its March 15, 2011, order, employer was entitled to request an IME in the process of evaluating claimant's impairment for the purpose of claim closure. ORS 656.325(1) requires a worker who is receiving compensation to submit to up to three IMEs:

> "Any worker entitled to receive compensation under this chapter is required, if requested by the Director of the Department of Consumer and Business Services, the insurer or self-insured employer, to submit to a medical examination at a time reasonably convenient for the worker as may be provided by the rules of the director. No more than three independent medical examinations may be requested except after notification to and authorization by the director. If the worker refuses to submit to any such examination, or obstructs the same, the rights of the worker to compensation shall be suspended with the consent of the director until the examination has taken place, and no compensation shall be payable during or for account of such period. * * *

> "(b)  When a worker is requested by the director, the insurer or self-insured employer to attend an independent medical examination, the examination must be conducted by a physician selected from a list of qualified physicians established by the director under ORS 656.328.

> "(c)  The director shall adopt rules applicable to independent medical examinations conducted pursuant to paragraph (a) of this subsection that:

> "(A)  * * * * *

> "(B)  Impose a monetary penalty against a worker who fails to attend an independent medical examination without prior notification or without justification for not attending the examination."

As the Supreme Court explained in *Robinson v. Nabisco, Inc.*, 331 Or 178, 187, 11 P3d 1286 (2000), although the statute

---

[5] We note that the two prior IMEs, by Drs. Wicher and Glass, stated that claimant did not have any impairment due to the compensable event.

does not explicitly state the purpose of an IME, in context, its purpose is self-explanatory. The examination is intended to provide the director, the self-insured employer, or the employer's insurer with information about a claimant's condition from a doctor who has no relationship with the claimant. "The statute gives claimants no role in selecting the person who performs the [examination] but, by implication, leaves that matter to the person or entity that requests the examination." *Id*.

There is no dispute that, at the time it requested that claimant submit to an IME by Davies, employer was entitled to request an IME. This would have been claimant's third IME, in preparation for claim closure, although the IME could be used to rate claimant's impairment only if Friedman concurred in it. ORS 656.245(2)(b)(C) ("[O]nly a physician qualified to serve as an attending physician * * * who is serving as the attending physician at the time of claim closure may make findings regarding the worker's impairment for the purpose of evaluating the worker's disability."). Thus, despite claimant's concern that Davies's opinion would predictably support employer's view of claimant's impairment, under ORS 656.325(1), claimant was required to submit to the examination by Davies, absent an order from the Compliance Section that relieved claimant of the obligation to attend the IME.

Claimant points out that OAR 436-060-0095(1) requires that "a worker submit to independent medical examinations *reasonably requested* by the insurer or the director." (Emphasis added.) In claimant's view, pursuant to that rule, a standard of reasonableness governs requests for IMEs, and a worker need not submit to an IME when, as in this case, the requested IME would predictably support the employer's position that the claimant's impairment is not related to her employment, would not be concurred in by the attending physician, and, therefore, could not be used in determining the claimant's level of impairment.

Employer responds that the rule's requirement that the examination be "reasonably requested" refers only to the time, location, and circumstances of the IME, *see* ORS 656.325(1)(c)(A) (permitting a worker to challenge the

reasonableness of the location of a required medical examination); OAR 436-010-0265 (stating manner of notification, time, and location of examination), and does not, and could not, create a substantive standard of reasonableness as a condition for submitting to an IME pursuant to ORS 656.325. We need not, and do not, resolve in this case whether the administrative rule establishes a substantive "reasonableness" standard as a prerequisite to attending an IME, or whether such a requirement would be consistent with ORS 656.325(1). The board concluded that it was speculative that employer's motive in requesting the Davies's IME was suspect. In light of our standard of review, we conclude that the record supports the board's determination. We therefore affirm the board's conclusion in its March 15, 2011, order that employer reasonably requested the IME and that claimant was required to attend.[6] For that reason, we affirm the board's determination in its March 15, 2011, order, challenged in claimant's first and third assignments in A148303, that employer's failures to close the claim in response to claimant's requests of March 25 and March 31, 2009, and employer's April 8, 2009, refusal to close the claim were not unreasonable.

### June 25, 2009, Request For Hearing

As noted, the board's order of March 23, 2009, required employer's acceptance of "major depression and panic disorder" but instead, on April 10, 2009, employer issued a modified notice of acceptance of "acute" major depression and panic disorder. Employer's modified notice of acceptance gave no explanation of why it did not accept what the board ordered employer to accept or give an explanation of why employer's modified notice of acceptance added the word "acute." In response, on April 14, 2009, claimant objected to the amended notice of acceptance and sought acceptance of "major depression and panic disorder." Claimant also made multiple requests to close the claim, in April and June,

---

[6] We note that a dissenting board member agreed with claimant's assertion that employer did not reasonably request an IME by Davies, because, based on employer's pattern of conduct, it was clear that employer merely sought the additional medical opinion to support its contention that claimant's impairment was attributable to her personal issues, a contention that Friedman had previously rejected.

2009. Not until November 5, 2009, immediately before the case was submitted to the ALJ on the written record, did employer issue an amended notice of acceptance including "major depression and panic disorder." In her June 25, 2009, request for hearing, claimant primarily contended that, in light of the board's March 23, 2009, order, employer's modified notice of acceptance of April 10 was unreasonable and that its nonresponse to claimant's April 14, 2009, request for acceptance of the "major depression and panic disorder" constituted a *de facto* denial of the claim. Claimant also contended that employer had continued to unreasonably refuse to close the claim in response to claimant's repeated requests for closure.

In its March 15, 2011, order, the board agreed with claimant that, in not responding to claimant's April 14, 2009, request for acceptance of an omitted-condition claim for "major depression and panic disorder," employer had *de facto* denied her claim for those conditions. The board further determined that claimant was entitled to an assessed attorney fee under ORS 656.386(1)(a) ("In such cases involving denied claims where an attorney is instrumental in obtaining a rescission of the denial prior to a decision by there Administrative Law Judge, a reasonable attorney fee shall be allowed.") for having successfully overturned employer's *de facto* denial of the claim, and awarded a fee of $4,000.

Nonetheless, the board concluded that employer's refusal to close the claim in response to claimant's April and June 2009 requests for closure was not unreasonable, in view of the pending requested IME. For that reason, the board held that claimant was not entitled to a penalty under ORS 656.268(5)(d) (failure or refusal to close a claim) or to attorney fees under ORS 656.282(1) for employer's April 2009 *de facto* refusals to close the claim.

The board further held that no penalty could be assessed under ORS 656.262(11)(a) for employer's unreasonable refusal to accept the claim of "major depression" as ordered by the board on March 23, 2009, because, in view of the absence of an award of disability, there were no "amounts then due," as required by that statute.

Finally, the board concluded in its March 15, 2011, order that employer's delay until November 5, 2009, in accepting claimant's "major depression and panic disorder" constituted an unreasonable delay in acceptance of the claim under ORS 656.262(11)(a), which was a separate act of misconduct in addition to employer's unreasonable acceptance of "acute" major depression and panic disorder on April 10, 2009. Although the board concluded, again, that there were no amounts then due on which to base a penalty under ORS 656.262(11)(a) (2009), the board concluded that claimant was entitled to an award of attorney fees under that statute, and awarded a fee in the amount of $2,000. However, the board rejected claimant's contention that she was entitled to an additional fee under ORS 656.382(1) for employer's *de facto* denial of the claim of "major depression and panic disorder," reasoning that employer's unreasonable "*de facto* denial of major depression and panic disorder" did not constitute separate misconduct from employer's unreasonable delay in accepting "major depression and panic disorder."

For the same reasons discussed above pertaining to claimant's March 25 and March 31, 2009, requests for closure and employer's April 8, 2009, refusal to close the claim, we reject claimant's argument, made in her first and third assignments in A148303, that the board erred in determining that employer did not unreasonably refuse to close claimant's claim in response to requests for closure in April and June, 2009.

Claimant contends in her fourth assignment in A148303 that the board erred in determining that no penalty could be awarded under ORS 656.262(11)(a) for employer's failure to accept claimant's "major depression and panic disorder," as ordered by the board on March 23, 2009, because no compensation was "then due." Claimant asserts that the award of a penalty under ORS 656.262(11)(a) for the failure to accept a claim is properly based on the compensation ultimately awarded and that, here, claimant ultimately received an award of 35 percent unscheduled permanent partial disability for her compensable "major depression and panic disorder."

At this point, it is appropriate to address employer's argument in its cross-petition in A148303, in which employer disputes the board's conclusion in its March 15, 2011, order that employer's failure to respond to claimant's objection of April 14, 2009, constituted a refusal to accept or deny a new or omitted medical condition or a *de facto* denial of claimant's claim for major depression. As employer sees it, claimant's major depression and panic disorder were accepted by operation of law by virtue of ALJ Mills's order of September 2008, the board's March 23, 2009, order, and by employer's formal written acceptance on April 10, 2009. Employer rejects the board's conclusion that employer's characterization of claimant's major depression as "acute" transformed the acceptance into something other than an acceptance of major depression.

The scope of an employer's acceptance is a question of fact to be reviewed for substantial evidence. *SAIF v. Dobbs*, 172 Or App 446, 451, 19 P3d 932, *on recons*, 173 Or App 599, 23 P3d 987 (2001). Likewise, whether a condition has been denied is a question of fact reviewed for substantial evidence. *Crawford v. SAIF*, 241 Or App 470, 478, 250 P3d 965 (2011). Here, the board found that by accepting "acute" depression and not timely responding to claimant's request to accept "major depression," employer *de facto* denied major depression, and we conclude that the board's finding is supported by substantial evidence.[7]

Employer further asserts that claimant's letter of April 14, 2009, did not constitute a request for acceptance of an omitted condition, because the letter did not expressly request that a condition be accepted. The letter to employer's attorney stated: "Please see that [employer] issues an amended acceptance to include 'major depression and panic disorder.'" The letter expressly requested acceptance of an omitted condition of "major depression and panic disorder." The letter did not merely request clarification of a notice of acceptance to determine whether a condition was accepted or denied. *See Crawford*, 241 Or App at 480. The letter satisfied

---

[7] Employer's argument, in its cross-petition in A148303, that there is no difference between accepting a condition as "acute" and accepting a condition without "acute" causes this court to wonder why, if that really was employer's position, it did not accept the condition without "acute," as claimant twice requested.

the requirements for an omitted-condition claim under ORS 656.262(6)(d).

We return to claimant's contention in her fourth assignment in A148303 that the board erred in determining that no penalty could be assessed under ORS 656.262(11)(a), for employer's delay in acceptance of claimant's "major depression and panic disorder," because, at the time of the November 5, 2009, notice of closure, there were no amounts due. In *Walker III*, we held, citing *Johnson v. SAIF*, 219 Or App 82, 180 P3d 1237 (2008), that, for the purpose of a penalty assessed under ORS 656.268(5)(d) for a *de facto* refusal to close a claim (based on a request for closure of September 30, 2009), it is the amount of compensation that is ultimately determined to be due the claimant on the date of the *de facto* refusal to close the claim that determines the basis for the penalty. 254 Or App at 684 ("[T]he relevant point in time must be the time at which that unreasonable notice of closure or refusal to close was issued."). As we noted in *Walker III*, claimant ultimately received an award of 35 percent permanent partial disability for her major depression and panic disorder. *Id.* at 685.

ORS 656.262(11)(a) provides:

"If the insurer or self-insured employer unreasonably delays or unreasonably refuses to pay compensation, or unreasonably delays acceptance or denial of a claim, the insurer or self-insured employer shall be liable for an additional amount up to 25 percent of the amounts then due plus any attorney fees assessed under this section."

Like ORS 656.268(5)(d), which we construed in *Walker III*, 254 Or App at 684, ORS 656.262(11)(a) requires that a penalty be based on amounts "then due." In *Walker III*, we held that the amount "then due" was the amount that the claimant was ultimately determined to have been entitled to be paid on the date of the *de facto* unreasonable refusal to close the claim, not the amount awarded in the notice of closure. *Id.* Here, similarly, we hold that the amount "then due" claimant for purposes of the penalty under ORS 656.262(11)(a) is the amount of compensation that was ultimately determined to be owed to claimant as of the date of employer's unreasonable delay in the acceptance of the claim.

Accordingly, we conclude that, contrary to the board's order, claimant was entitled to a penalty under ORS 656.262(11)(a) for employer's unreasonable delay in the acceptance of claimant's "major depression and panic disorder," based on the amount of compensation ultimately awarded on this claim. Thus, in A148303, we remand the case to the board for a determination of the penalty.

### July 22, 2009, Request For Hearing

Claimant's July 22, 2009, request for hearing challenged the Compliance Section's July 6, 2009, order suspending claimant's benefits. We have previously explained our rejection of claimant's contention that the IME that formed the basis for the suspension of benefits was not reasonably requested. Claimant further raised procedural challenges to employer's request for suspension. The board rejected those challenges in its March 15, 2011, order and, in her second assignment of error in A148303, claimant contends that the board erred.

Claimant contends in her second assignment of error that the board erred in determining that employer's suspension request complied with OAR 436-060-0095(8), because the request did not completely and accurately describe "any accepted conditions."[8] As employer correctly points out, however, OAR 436-060-0095(12) provides that a failure to comply with one or more of the requirements of OAR 436-060-0095 "may" be grounds for denial of suspension, and thereby grants to the director discretion to consider requests for suspension that do not satisfy the technical requirements of the rule.[9] Because we conclude that

---

[8] The request for suspension described the accepted conditions as "acute major depression and panic disorder," but did not mention that the board had ordered acceptance of "major depression and panic disorder," and also did not mention claimant's previously accepted conditions of disabling anxiety with depression.

[9] As relevant here, OAR 436-060-0095 provided:

"(1) The division will suspend compensation by order under conditions set forth in this rule. *** The worker is not entitled to compensation during or for the period of suspension when the worker refuses or fails to submit to, or otherwise obstructs, an independent medical examination reasonably requested by the insurer or the director under ORS 656.325(1). Compensation will be suspended until the examination has been completed. *** The division may determine whether special circumstances exist that would not

the director had discretion to consider employer's request for suspension even if employer's request did not strictly comply with OAR 436-060-0095(8), and there is no contention that the director abused that discretion, we reject claimant's second assignment of error and do not address whether employer's request for suspension strictly complied with the rule.

The director's order suspending compensation provided, "This order will then terminate upon closure of the claim." In its cross-petition in A148303, employer asserts that the board erred to the extent that it upheld that portion of the director's order of suspension. Employer acknowledges that it did not raise that issue before the director, at the hearing, or before the board, but it argues that the question is jurisdictional and may be raised for the first time on appeal. In employer's view, the director lacked subject matter

---

warrant suspension of compensation for failure to attend or obstruction of the examination.

"* * * * *

"(3) A worker must submit to independent medical examinations reasonably requested by the insurer or the director. The insurer may request no more than three separate independent medical examinations for each open period of a claim, except as provided under OAR 436-010. Examinations after the worker's claim is closed are subject to limitations in ORS 656.268(7).

"* * * * *

"(8) * * * The request must include the following information:

"* * * * *

"(b) The claim status and any accepted or newly claimed conditions[.]

"* * * * *

"(9) If the division consents to suspend compensation, the suspension shall be effective from the date the worker fails to attend an examination or such other date the division deems appropriate until the date the worker undergoes an examination scheduled by the insurer or director. Any delay in requesting consent for suspension may result in authorization being denied or the date of authorization being modified.

"(12) * * * Failure to comply with one or more of the requirements addressed in this rule may be grounds for denial of the insurer's request.

"(13) The division may also take the following actions concerning the suspension of compensation:

"(a) Modify or set aside the order of consent before or after filing of a request for hearing.

"(b) Order payment of compensation previously suspended where the division finds the suspension to have been made in error.

"(c) Reevaluate the necessity of continuing a suspension."

jurisdiction to limit the duration of the suspension of benefits. Essentially, employer contends that, under the statute, the director may give only initial consent to a suspension and lacks subject matter jurisdiction to impose a durational limit to a suspension. Further, employer contends, to the extent that OAR 436-060-0095(1) addresses the director's *suspension* of benefits (by providing, for example that "[t]he division will suspend compensation by order"), the rule is inconsistent with the statute. In the alternative, employer contends that, at the time of the director's order, no justiciable controversy existed over the duration of the director's consent or the duration of employer's suspension, and that the director therefore could not lawfully place a limit on the suspension of claimant's compensation.

Thus, employer's contention in its cross-petition in A148303 is that, because claimant never attended an IME by Davies, the suspension of claimant's benefits never terminated and, because ORS 656.325(1) provides that "no compensation shall be payable during or account of such period [of suspension]," claimant would not be entitled to receive any compensation, including the 35 percent permanent partial disability benefits ultimately awarded to her on review of the notice of closure. Claimant responds that the practical upshot of employer's interpretation of the statute to require that only the insurer or employer "suspends" benefits is that there was no suspension in this case, because employer did not issue any notification to claimant, separate from the Compliance Section's order, suspending claimant's benefits.

We need not decide whether employer's contention in A148303 raises a jurisdictional question that must be considered even if not preserved or simply a question of the director's authority, because the same question is preserved in A149021. For the reasons explained below in our discussion of employer's petition in A149021, we conclude, as a matter of statutory construction, that the requirement in ORS 656.325(1) that the director consent to the suspension of benefits means that the director's consent is required for a suspension of benefits and that the director's authority to give consent implicitly encompasses the authority to limit the scope of that consent and, thereby, the duration of the suspension.

Our preceding analysis resolves the issues raised in A148303 on judicial review of the board's order of March 15, 2011. We move on to consideration of the issues presented in A149021, on judicial review of the board's order of June 8, 2011, which overlap a bit with our discussion of A148303. As previously noted, employer eventually accepted and then closed claimant's claim for "major depression and panic disorder" on November 5, 2009, without an award of permanent partial disability. In an order on reconsideration, the ARU increased claimant's award to 35 percent unscheduled permanent partial disability, and an ALJ and the board upheld that award. In a separate petition, A149021, employer challenges the board's order upholding that award and ordering the payment of permanent partial disability to claimant. The primary issue, raised in employer's first assignment of error, concerns the effect of the Compliance Section's suspension order and whether the board correctly held that employer's suspension of benefits terminated upon claim closure. In employer's view, under ORS 656.325, although the director has authority to "consent" to a suspension of benefits, the suspension itself is carried out by the employer/insurer, and terminates only by operation of law, when the worker has attended the IME and the IME has been completed. ORS 656.325; OAR 436-060-0095. As employer points out, OAR 436-060-0095(1) provides that,

> "[i]f the division consents to suspend compensation, the suspension shall be effective from the date the worker fails to attend an examination or such other date the division deems appropriate until the date the worker undergoes an examination scheduled by the insurer or director."

Employer contends that the administrative rule requires that a suspension of benefits terminates only after the worker has attended the required IME. In this case, as we have noted, the board decided that the suspension of claimant's benefits terminated when employer closed the claim on November 5, 2009, as expressly provided in the director's order. In employer's view, in light of the statutory provision and the administrative rules requiring that a suspension of benefits continue until the worker has undergone the required examination, the director's consent is required only to initiate a suspension, but the suspension continues

by operation of law through any period of noncooperation and remains in effect until the worker attends the required IME.

There is no dispute that the suspension of benefits under ORS 656.325(1) is a matter for the director's consideration. That statute provides that, "[i]f the worker refuses to submit to any [IME], or obstructs the same, the rights of the worker to compensation shall be suspended with the consent of the director until the examination has taken place, and no compensation shall be payable during or for account of such period." Thus, an employer's authority to suspend compensation must be exercised "with the consent of the director" and, therefore, depends on the director's consent. The director has authority under ORS 656.325(1) to determine whether to give consent, and implicitly has authority to determine the duration of that consent. In this case, the director limited consent to the period during which the claim was open. Thus, at the time of claim closure, the suspension terminated. In view of our conclusion, we reject employer's second assignment of error in A149021, in which it contends that the board erred in upholding the ARU's order requiring payment of benefits.

Although the board upheld the ARU's and the ALJ's award of benefits to claimant, representing an increase from an award of zero to 35 percent permanent partial disability, and awarded claimant's attorney an assessed fee of $3,000 for services on review regarding the permanent partial disability issue pursuant to ORS 656.382(2), the board reversed that portion of the AJL's order awarding claimant a penalty under ORS 656.268(5)(e) and associated attorney fees under ORS 656.382(1) for employer's alleged unreasonable resistance to payment of claimant's permanent partial disability benefits. In a cross-petition for review in A149021, claimant asserts that the board erred in failing to award the penalty and attorney fees.

We address first the penalty. ORS 656.268(5)(e) provides:

"If, upon reconsideration of a claim closed by an insurer or self-insured employer, the director orders an increase by 25 percent or more of the amount of compensation to be

paid to the worker for permanent disability and the worker is found upon reconsideration to be at least 20 percent permanently disabled, a penalty shall be assessed against the insurer or self-insured employer and paid to the worker in an amount equal to 25 percent of all compensation determined to be then due the claimant. If the increase in compensation results from information that the insurer or self-insured employer demonstrates the insurer or self-insured employer could not reasonably have known at the time of claim closure, from new information obtained through a medical arbiter examination or from a determination order issued by the director that addresses the extent of the worker's permanent disability that is not based on the standards adopted pursuant to ORS 656.726(4)(f), the penalty shall not be assessed."

As the board found, there is no dispute that the ARU increased claimant's permanent partial disability award by the amount required by ORS 656.268(5)(e). The board reasoned, however, that the increase in benefits resulted from information employer could not reasonably have known at the time of claim closure and, for that reason, no penalty could be assessed. The board based its conclusion on a statement in a February 22, 2008, report by Friedman that "the adversarial manner in which this claim has been handled over the last four years has contributed to exacerbation and perpetuation of [claimant's] anxiety and depressive symptoms." From that statement, the board concluded that employer could reasonably conclude that Friedman attributed at least a portion of claimant's symptoms to a cause other than the compensable major depression and panic disorder. *See Khrul v. Foremans Cleaners*, 194 Or App 125, 131-32, 93 P3d 820 (2004) (medical arbiter's report stating that the claimant's current symptoms were likely caused by the stress of the ongoing claim permitted inference that part of the claimant's impairment was due to the compensable condition or the stress of claims processing). The board found that the extent of claimant's permanent impairment was not clarified until the ARU sought and obtained Friedman's post-closure opinion stating that 100 percent of claimant's impairment was due to the employment-related major depression and panic disorder, and that employer therefore had demonstrated that it could not reasonably have known at the time

of closure that claimant's work-related impairment would be at least 20 percent.[10]

We reject the board's reasoning. As noted, Friedman was claimant's attending physician. When, as here, no examination by a medical arbiter has been requested, only the findings of the attending physician can be used to determine a claimant's extent of impairment. ORS 656.245(2)(b)(C). The director's suspension order did not relieve employer of its obligation upon closure under ORS 656.268(1) to rate claimant's permanent disability based on the impairment findings of the attending physician. If employer was uncertain at the time of closure whether Friedman believed that all of claimant's impairment related to her compensable condition, employer could simply have requested clarification from Friedman, as did the ARU. In the absence of that inquiry, we reject the board's conclusion that employer reasonably lacked knowledge at the time of closure that claimant's work-related impairment was at least 20 percent.

Alternatively, the board reasoned that, in view of the ambiguity in the Compliance Section's order of suspension, which provided on the one hand that the order terminated upon closure of the claim, but also provided that the suspension "shall continue" until claimant attended an IME, "employer could not have reasonably known at the time of closure that the suspension order did indeed terminate upon claim closure."

With respect, we reject the board's analysis on that point as well. There was no ambiguity in the Compliance Section's order consenting to the suspension of benefits. It is true, as the board noted, that the order stated that the suspension "shall continue" until claimant attended the IME. However, as we have held, under ORS 656.325, a suspension is conditioned on the director's consent. The director's order also expressly stated that the order would terminate upon closure of the claim. With the termination of the order consenting to the suspension of benefits, the suspension itself was no longer in effect. It is not a plausible interpretation

---

[10] In light of its conclusion, the board also considered and rejected claimant's alternate contention that she was entitled to a penalty and attorney fees under ORS 656.268(5)(d) based on an unreasonable closure of the claim.

of ORS 656.325 that a suspension of benefits could continue after the termination of an order consenting to suspension. Employer's reason for requesting suspension of benefits was to force claimant to attend the IME to assist employer in closing the claim. Once employer issued its notice of closure the reason for the order of suspension to attend the IME no longer existed.

Accordingly, we conclude that the board erred in denying claimant's request for the assessment of a penalty under ORS 656.268(5)(e) for the unreasonable resistance to payment of compensation, based on the amount of compensation determined to be "then due," *see Walker III*, as well as an attorney fee under ORS 656.382(1). In light of our conclusion, we do not address claimant's assignments of error related to her alternate contention that she was entitled to a penalty under ORS 656.268(5)(d) for the same misconduct.

In A148303, on petition, remanded for an award of a penalty under ORS 656.262(11)(a) for employer's unreasonable delay in the acceptance of claimant's "major depression and panic disorder"; affirmed on cross-petition.

In A149021, affirmed on petition; reversed on cross-petition for assessment of a penalty under ORS 656.268(5)(e) and an attorney fee under ORS 656.382(1), for employer's unreasonable resistance to payment of compensation.