Argued and submitted October 16, 2019, reversed and remanded
September 10, 2020

In the Matter of the Compensation of
Maria D. Alvarado-DePineda, Claimant.

Maria D. ALVARADO-DEPINEDA,
*Petitioner,*

*v.*

SAIF CORPORATION
and Jogi - Campus Inn,
*Respondents.*

Workers' Compensation Board
1703539; A168686

474 P3d 430

At work, claimant injured her right shoulder and knee. Upon closure of her workers' compensation claim, SAIF Corporation awarded her 11 percent whole person impairment but did not award work disability. Following a reconsideration process, claimant was awarded disability. However, the Workers' Compensation Board did not award claimant a penalty under ORS 656.268(5)(g) for SAIF's failure to award disability at claim closure, because it concluded that SAIF could not reasonably have known prior to claim closure the information that led to the award of disability. Claimant seeks judicial review, contending that SAIF had the duty to seek clarification of the extent of claimant's impairment because that information was ambiguous and that, had SAIF complied with that duty to clarify, it reasonably could have known of claimant's entitlement to disability. *Held*: The board erred by not awarding claimant a penalty under ORS 656.268 (5)(g). There were multiple ambiguities on the record available to SAIF at the time of claim closure that gave rise to SAIF's duty to clarify the extent of claimant's impairment. Had SAIF done so, it reasonably could have known that claimant was entitled to an award of work disability.

Reversed and remanded.

Dale C. Johnson argued the cause and filed the brief for petitioner.

Allison Lesh argued the cause and filed the brief for respondents.

Before Lagesen, Presiding Judge, and DeVore, Judge, and Powers, Judge.

LAGESEN, P. J.

Reversed and remanded.

**LAGESEN, P. J.**

At work, claimant injured her right shoulder and knee. Upon closure of her workers' compensation claim, SAIF Corporation awarded her 11 percent whole person impairment but did not award work disability. Following a reconsideration process, claimant was awarded disability. The issue before us is whether SAIF's failure to award disability at closure warrants a penalty under ORS 656.268(5)(g).[1] The Workers' Compensation Board determined it did not, concluding that SAIF could not reasonably have known prior to claim closure the information that led to the award of disability. Claimant seeks judicial review, contending that, under *Walker v. Providence Health Systems Oregon*, 267 Or App 87, 340 P3d 91 (2014) (*Walker I*), *modified on recons*, 269 Or App 404, 344 P3d 1115 (2015) (*Walker II*), SAIF had the duty to seek clarification of the extent of claimant's impairment because that information was ambiguous and that, had SAIF complied with that duty to clarify, it reasonably could have known of claimant's entitlement to disability. On review, we agree with claimant and reverse.

We recount the facts as found in the board's order, which adopted findings of fact made by the administrative law judge (ALJ), and we supplement those facts with additional ones from the record for clarity. *Vaughn v. Marion County*, 305 Or App 1, 2, 469 P3d 231 (2020).

Claimant is a 60-year-old housekeeper who injured her right knee and right shoulder while working for Campus

---

[1] ORS 656.268(5)(g) provides:

"If, upon reconsideration of a claim closed by an insurer or self-insured employer, the director orders an increase by 25 percent or more of the amount of compensation to be paid to the worker for permanent disability and the worker is found upon reconsideration to be at least 20 percent permanently disabled, a penalty shall be assessed against the insurer or self-insured employer and paid to the worker in an amount equal to 25 percent of all compensation determined to be then due the claimant. *If the increase in compensation results from information that the insurer or self-insured employer demonstrates the insurer or self-insured employer could not reasonably have known at the time of claim closure*, from new information obtained through a medical arbiter examination or from a determination order issued by the director that addresses the extent of the worker's permanent disability that is not based on the standards adopted pursuant to ORS 656.726(4)(f), *the penalty shall not be assessed*."

(Emphases added.)

Inn on March 14, 2015. She consulted Dr. Abraham two months later, who served as her attending physician through closure of her claim. SAIF accepted her claim for right knee contusion and sprain, right shoulder full thickness tear of the anterior third of the proximal supraspinatus tendon, right shoulder full thickness tear of the distal portion of the subscapularis tendon, and right shoulder subacromial-subdeltoid bursitis. Claimant had surgery to address her shoulder injuries later that year.

On March 29, 2016, a job analysis for claimant's job as a housekeeper was prepared, which outlined the physical requirements of claimant's job. The analysis found, among other findings, that "the maximum weight lifted in connection with [her] work would be 25 pounds, which is the weight of a bag of trash or soiled linen/towels." The analysis did not specify exactly how high claimant might need to lift 25 pounds, but the trash and towels would need to be placed in and removed from a supply cart, and she was required to lift the trash bags into a dumpster. Claimant's job also required her to push or pull the supply cart for 20 to 40 feet between rooms, for which she needed to be able to generate at least "30 pounds of force *** when the wheels were turned/not aligned." The analysis also indicated that she needed to be able to lift up to 20 pounds when loading or replenishing the supply cart.

Claimant was later examined at the request of SAIF by an orthopedist, Dr. Kitchel. Kitchel determined that claimant "should be considered to have a permanent work restriction of a 10-pound lifting limit in the right arm and no use of the right arm above shoulder height." He also concluded that claimant was medically stationary.

On February 2, 2017, Northwest Occupational Medicine Center conducted a work capacities evaluation (WCE) to determine the scope of claimant's functional abilities. Among other findings, the WCE found that claimant could lift 25 pounds from the floor to her waist, 10 pounds from her waist to her shoulder, and 10 pounds from her shoulder to overhead. She could perform a lateral transfer between two surfaces at waist level at a weight of 22.5 pounds, a bilateral carry of 20 pounds over 50 feet, and

could push and pull a maximum of 27.5 and 25 pounds respectively. Upon review of the job analysis, the WCE concluded that claimant could return to her work as a housekeeper because the job analysis described housekeeping as "within the light physical demand category," which claimant "was able to demonstrate at least on an occasional basis." The WCE further concluded that "[a] safe occasional lift of between 15 to 25 pounds is most appropriate for [claimant] to function within and appears consistent with her job at injury as a housekeeper." However, the WCE also allowed that claimant "may need breaks incorporated into her job in order for her to complete her job duties," even if those breaks might be as short as 20 to 30 seconds in length. The WCE did not address the fact that claimant was incapable of generating 30 pounds of pushing force, which her job at injury required according to the job analysis.

One month later, Abraham performed a closing exam wherein he noted that claimant had "been released to modified duty" but that Campus Inn had "not had any work for her." In his exam findings, Abraham indicated that (1) Kitchel had concluded that claimant should not lift more than 10 pounds with her right arm and should avoid overhead lifting and (2) he had "previously concurred with Dr. Kitchel's findings and measurements." Abraham also concurred with the WCE's findings and "felt like [claimant] was able to return to her job at injury as a housekeeper." He concluded, "I concur with the WCE findings in regards to [claimant's] return to work." The day after the closing exam, Abraham confirmed that concurrence by signing an additional form from SAIF indicating his agreement with the WCE's findings regarding claimant's work release to her "job at injury."

SAIF issued a Notice of Closure, which awarded 11 percent whole person permanent impairment for claimant's right shoulder and knee but did not award work disability. Claimant requested reconsideration from the appellate review unit (ARU).

Meanwhile, claimant's counsel sent Abraham a letter requesting clarification of claimant's release to work and

the extent to which she was permanently restricted. The letter explained the need for clarification:

> "Kitchel gave her permanent restrictions of no right-armed work over her shoulder and no lifting over 10 pounds with her right arm. You concurred with those limitations. The WCE was slightly ambiguous. The therapist that conducted the WCE concluded that [claimant] could return to housekeeping work, yet noted a lifting limit of 10 pounds from waist to shoulder and from shoulder to overhead. The job at injury required lifting and carrying up to a maximum of 25 pounds. The therapist said [claimant] met that demand, but in truth the WCE noted the ability to do so only in the floor to waist lift and not above the waist or shoulder. [Claimant's] ability at the WCE was consistent with Dr. Kitchel's limitations."

In response, Abraham signed his agreement with the following statement:

> "Per the WCE and Dr. Kitchel's report, [claimant] is limited to modified housekeeping work, which will exclude any work activities that require her to lift more than 10 pounds with her right dominant arm above waist level or to use her right arm above shoulder level. These are permanent restrictions."

Later, the ARU requested information regarding claimant's residual functional capacity. Abraham clarified that claimant could lift "10 lbs to her waist level 2/3 of the time. No lifting over shoulder[,] 10 lbs waist to shoulder less than 1/3 time."

Based on its examination of the information before SAIF at the time of closing, as well as Abraham's clarifying opinions, the ARU awarded claimant work disability benefits. It concluded that Abraham's post-closure reports showed that claimant was incapable of performing the duties of her job at injury. The ARU also found that "SAIF could reasonably have obtained the information in Dr. Abraham's 'post-closure' reports by seeking clarification of claimant's work release before claim closure," and it therefore awarded a 25 percent penalty under ORS 656.268(5)(g).

SAIF requested a hearing before an ALJ, contesting the penalty but not the modified award. It argued that

Abraham's clarification was a post-closure change of opinion that was unavailable at the time of claim closure, therefore, SAIF argued, it could not reasonably have known the information that resulted in claimant's increased award. The ALJ disagreed and affirmed the penalty. It noted that Abraham's closing exam mentioned both claimant's return to modified work duty and her ability to perform her job at injury. And the ALJ ultimately concluded that Abraham's concurrence with both Kitchel and the WCE left "internal inconsistencies and unexplained changes in opinion [that] were enough to have dictated the need for clarification before claim closure."

SAIF then sought board review. On review, the board reversed the penalty. It reasoned that the information leading to the increased award—Abraham's post-closure reports—only became available after SAIF had closed the claim and that, before claim closure, Abraham had unambiguously released claimant to her job at injury. Therefore, the board concluded, SAIF could not reasonably have known the information that resulted in a modification of claimant's award.

Claimant petitioned for judicial review. She assigns error to the board's (1) conclusion that SAIF could not reasonably have known prior to claim closure the information that led to claimant's increase in award and (2) failure to explain its conclusion that Abraham had unambiguously released claimant to her job at injury. Claimant argues that, under *Walker*, when there is cause for uncertainty as to the extent of a claimant's impairment, the insurer has the duty to request clarification. SAIF contends that (1) the board did not err because claimant's increase in award was based on post-closure reports that could not reasonably have been known to SAIF at the time of claim closure and (2) substantial evidence supports the board's interpretation of the medical record. We agree with claimant.

We review the board's determination of whether an increase in an award for permanent disability "could not reasonably have been known at the time of claim closure" for legal error. *Walker II*, 269 Or App at 407-08. "Whether an action is reasonable depends on the underlying facts

and, based on those facts, whether the conclusion the board made constitutes an error of law." *Id.* at 407. The insurer has the burden of establishing that, at the time of claim closure, it could not reasonably have known the information that would lead to an increase in award. *Id.* at 408. Therefore, the issue before us is whether the record supports the board's legal conclusion that SAIF "could not reasonably have known at the time of claim closure" the extent of claimant's impairment.

In assessing whether an insurer "could not reasonably have known" the extent of a claimant's impairment, we take into account the information in the insurer's hands at the time of closure, including the insurer's medical file on the claimant, the insurer's "duty to gather the information necessary to issue its notice of closure," and the insurer's related, legally recognized duty to seek clarification and gather additional information in the face of ambiguities. *See id.* (concluding that the insurer could reasonably have known that the claimant was entitled to a greater award because it could have recontacted the claimant's attending physician if it was unsure of the extent of the claimant's permanent disability, as the ARU later did after claim closure);[2] *see also Sanchez v. SAIF*, 242 Or App 339, 349, 255

---

[2] We note that our recognition in *Walker II* of an insurer's duty to clarify the extent of a claimant's impairment in the face of ambiguities in the claimant's records is consistent with the legislative history of ORS 656.268 adding the provision exempting insurers from penalties if they "could not reasonably have known" at the time of closure the information leading to the post-closure increase of benefits. *See* Or Laws 2005, ch 569, §§ 1-2. The legislature contemplated that an insurer would still be penalized under the statute if it "*failed to meet its obligation to obtain full information necessary to rate the worker's impairment.*" Audio Recording, House Committee on Business, Labor and Consumer Affairs, HB 2404, May 2, 2005, at 1:46:20 (comments of Vicky Graves, manager of the Claims Closure Division of Liberty Northwest), https://olis.leg.state.or.us (accessed July 21, 2020). The "could not reasonably have known" wording in the statute was intended to protect insurers from liability for penalties where the post-closure increase in a claimant's award is due to factors beyond the insurer's control:

"Unfortunately, the existing language is sufficiently broad that it also mandates a penalty under some circumstances in which a self-insured employer has acted lawfully and appropriately in rating impairment only to see the award increase based on changes in the opinion of the attending physician or other factors not within its control. While a penalty provision that sanctions the breach of duty by an insurer or self-insured employer makes sense, it makes no sense to penalize an insurer or self-insured employer for matters over which it had no control."

P3d 592 (2011) ("Whether a claim was properly closed must be based on the body of information actually available at the time of closure, because, pursuant to ORS 656.268(1)(a), the claim may be closed only when 'there is' (as opposed to could have been) sufficient information for the insurer to close that claim.").

Applying that standard to the information that was available to SAIF prior to claim closure here, the record was such that SAIF had the duty to seek clarification from Abraham before closing claimant's claim. First, the WCE found that claimant could return to her job at injury even though at least one of its findings—the finding that claimant could not generate 30 pounds of force to push a cart—did not meet the requirements of claimant's job analysis. Second, the lifting requirements outlined in the job analysis, when compared to the WCE's findings regarding claimant's lifting capabilities, give rise to another ambiguity. The WCE finds that claimant cannot lift more than 10 pounds above her waist. But, according to the job analysis, claimant must lift 25-pound bags of trash into a dumpster, and common experience with dumpsters would suggest that people usually have to lift trash bags higher than their waists to put them in dumpsters. Third, the WCE's recommendation that claimant return to her "job at injury" adds another ambiguity; that recommendation was qualified by findings that claimant could meet the demands of her job "at least on an occasional basis" and that claimant "may need breaks incorporated into her job in order for her to complete her job duties." Fourth, in claimant's closing exam, which occurred after the WCE, Abraham indicated that claimant had "been released to modified duty," despite also agreeing with the WCE's conclusion that claimant could return to her job at injury, giving rise to yet another ambiguity about claimant's disability at the time of closure.[3] Fifth, Abraham concurred in his closing exam with two conflicting reports: He

---

Audio Recording, Senate Rules Committee, HB 2404, June 17, 2005, at 50:42 (comments of Vicky Graves on behalf of insurers), https://olis.leg.state.or.us (accessed July 21, 2020).

[3] Although not clarified until after claim closure, we note that Abraham did in fact appear to understand the WCE to be releasing claimant to modified duty. Upon clarification, Abraham indicated that "[p]er the WCE and Dr. Kitchel's report, [claimant] is limited to modified housekeeping work."

concurred with Kitchel's finding that claimant could not use her right arm above her shoulder, then, immediately after that concurrence, agreed with the WCE's finding that claimant could lift up to 10 pounds above her shoulders.

Those multiple ambiguities on the record available to SAIF at the time of claim closure gave rise to SAIF's duty to clarify. That is, to avoid the penalty under ORS 656.268 (5)(g), SAIF had an obligation to gather the information necessary to determine the extent of claimant's impairment and clarify any apparent ambiguities in that information. Had SAIF done so, it reasonably could have known that claimant was entitled to an award of work disability, a conclusion that is compelled by the fact that, when asked about those ambiguities, Abraham clarified his opinion. As for SAIF's contention that Abraham's initial opinion was clear because he concurred in multiple instances with the WCE's conclusion regarding claimant's release to work, that argument is undercut by the inconsistencies in the WCE and Abraham's confusion, apparent on the face of his initial opinion, about the WCE's release of claimant to modified work.

Reversed and remanded.