Argued and submitted July 17, reversed and remanded for reconsideration
November 18, 1998

## In the Matter of the Compensation of
## George B. Calder, Claimant.
## SAIF CORPORATION
## and Wallace Buick Jeep Eagle,
*Petitioners,*

*v.*

## George B. CALDER,
*Respondent.*

(95-12587; CA A98273)

969 P2d 1050

Julene M. Quinn argued the cause for petitioners. On the brief was Michael O. Whitty.

Edward J. Harri argued the cause for respondent. With him on the brief were J. David Kryger and Emmons, Kropp, Kryger, Alexander, Egan and Elmer, P. C.

Before Riggs, Presiding Judge pro tempore, and Landau and Haselton, Judges.

RIGGS, P. J. pro tempore.

## RIGGS, P. J. pro tempore.

SAIF seeks review of an order of the Workers' Compensation Board, affirming without opinion an order of the administrative law judge (ALJ) holding that claimant has a rateable scheduled disability of the right arm. Because we agree with SAIF that the medical evidence does not support the Board's finding that claimant has disability to the arm, we reverse and remand the case for reconsideration of the award.

Claimant injured his right shoulder at work when he slipped and fell on some ice. Claimant's physician diagnosed a rotator cuff tear and recommended surgery. SAIF accepted a claim for strain and right rotator cuff tear. After claimant was determined to be medically stationary, Dr. Vigeland, claimant's treating physician, reported to SAIF that 100 percent of claimant's loss resulted from loss of muscle or disruption of the musculotendinous unit in the right rotator cuff. In his operative report he noted that the coracobrachialis ligament was preserved during surgery.

SAIF closed the claim with an award of 35 percent unscheduled disability for the right shoulder. Claimant requested reconsideration, disagreeing with the medical impairment findings and requesting an award of scheduled disability and an increase in unscheduled disability.

A medical arbiter, Dr. Scheinberg, examined claimant, and reported:

> "Motor strength in the upper extremities *in the shoulder flexors is 3/5 on the right, 5/5 left.* Shoulder abductors are 3/5 on the right, 5/5 left. External rotators are 3/5 right, 5/5 left. Extensors are 5/5 bilaterally. Internal rotators are 5/5 bilaterally. Biceps, triceps, and wrist strength is all 5/5 bilaterally. Intrinsics are normal, pinch is normal. Grip strength is 80 foot pounds on the right, 90 pounds left.

> "IMPRESSION:

> "1. Chronic tear, right rotator cuff, and long head of right biceps tendon, superimposed on degenerative arthritic changes in the subacromial space." (Emphasis added.)

Following receipt of Scheinberg's report, the Appellate Unit issued an order on reconsideration reducing claimant's unscheduled award to 31 percent but awarding scheduled disability for a 13 percent loss of strength in the right arm.

The Board accepted Scheinberg's opinion that claimant had suffered loss of strength in the right shoulder flexors. It determined, by reference to a medical dictionary, that claimant's coracobrachial ligament, which had been mentioned in Vigeland's operative report as having been "preserved" during surgery, was a ligament of the arm involved in shoulder flexion. The Board then found that claimant had suffered loss of strength in the right arm.

SAIF challenges only the scheduled award for the right arm, asserting that it is not supported by the medical evidence. The question is whether, in its interpretation of the medical reports, the Board could reasonably find that the coracobrachial ligament was involved and that claimant had suffered loss of strength in the right arm.

■ A court or administrative agency may take judicial notice of facts "[c]apable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." OEC 201 (b)(2); ORS 183.450(4). A dictionary may be such a "source." *See Bend Millwork v. Dept. of Revenue*, 285 Or 577, 592 P2d 986 (1979). We and the Supreme Court have often referred to medical dictionaries to define medical terms. *See, e.g., Barrett v. Coast Range Plywood*, 294 Or 641, 643, 661 P2d 926 (1983); *Robinson v. SAIF Corp.*, 147 Or App 157, 159, 935 P2d 454 (1997); *Gornick v. SAIF Corp.*, 92 Or App 303, 308, 758 P2d 401 (1988); *State v. Reed*, 83 Or App 451, 455, 732 P2d 66 (1987). It was appropriate for the Board to refer to the medical dictionary for the purpose of determining what the coracobrachial ligament is.

■ However, the Board's opinion went beyond the dictionary definition and also beyond the reasonable inferences that could be drawn from the medical evidence. While it is true that the dictionary identifies the coracobrachial ligament as a ligament of the arm involved in flexion, Vigeland's operative report gave no indication that the coracobrachial ligament had been affected by the injury or the surgery. Scheinberg's report made no reference to loss of arm

strength or to the coracobrachial ligament. The Board's finding of loss of arm strength is dependent on its own conclusion that, because the coracobrachial ligament was mentioned in Vigeland's report, it must have been involved in the loss of shoulder flexion noted in Scheinberg's report. The Board is not an agency with specialized medical expertise entitled to take official notice of technical facts within its specialized knowledge. *See* ORS 183.450(4). Its findings must be based on medical evidence in the record. ORS 656.268(7)(g). Here, the medical evidence does not support the finding that claimant experienced a loss of arm strength.

Because it is not possible to know to what extent the Board's reliance on its finding affected its determination of claimant's award, we remand the case to the Board for reconsideration.

Reversed and remanded for reconsideration.