Argued and submitted October 6, affirmed December 16, 2015

In the Matter of the Compensation of
Gerald W. Mogensen, Claimant.
## LABOR READY,
*Petitioner,*

*v.*

## Gerald W. MOGENSEN,
*Respondent.*

Workers' Compensation Board
1205059; A157258

365 P3d 623

Jerald P. Keene argued the cause for petitioner. With him on the briefs was Oregon Workers' Compensation Institute, LLC.

Christopher D. Moore argued the cause for respondent. With him on the brief was Moore & Jensen.

Before Duncan, Presiding Judge, and DeVore, Judge, and Flynn, Judge.

DUNCAN, P. J.

## DUNCAN, P. J.

Claimant suffered a compensable injury that resulted in the partial amputation of his left index finger. He subsequently filed a "new or omitted medical condition claim" pursuant to ORS 656.267, seeking acceptance of a consequential condition that he described as "complex regional pain syndrome." Employer denied the claim, but the Workers' Compensation Board (the board) determined that it was compensable. Employer now seeks review of the board's determination. The question on judicial review is whether the board correctly determined that it could address the compensability of the ultimately diagnosed condition—"CRPS II"—in the context of its review of employer's denial of "complex regional pain syndrome." Employer contends that the board erred in addressing the compensability of CRPS II, because that diagnosis was not encompassed within or placed at issue by the claim. We review the board's order for substantial evidence and errors of law, ORS 656.298(7); ORS 183.482(8)(a), (c), and conclude that the board did not err in considering the compensability of the condition; therefore, we affirm.

Claimant suffered a compensable injury at work when he severed a portion of the tip of his left index finger with a circular saw. Employer accepted a claim for a partial index finger amputation. Following surgery and physical and occupational therapy, claimant was released to work. The claim was closed with an award of permanent partial disability compensation.

Claimant continued to experience pain and other symptoms in his finger, including hypersensitivity to mechanical stimuli, stiffness, discoloration, and cold sensitivity. Claimant's primary care physician referred him to Dr. Starr, a pain management specialist. Starr believed that claimant's symptoms indicated a dysfunction of claimant's local sympathetic system, which Starr diagnosed as "complex regional pain syndrome," also described as "dystrophy, reflex sympathetic." For insurance billing purposes, Starr identified claimant's condition under the International Classification of Diseases (ICD) as "dystrophy, reflex sympathetic, upper limb." Reports and notes of claimant's physicians

and physical therapists variously described claimant's condition as "complex" or "chronic" regional pain syndrome, "reflex sympathetic dystrophy," "CRPS" or "RSD." Starr's therapies, which included nerve-blocking injections into claimant's neck, were directed to that diagnosis and reduced claimant's symptoms for short periods of time but did not eliminate them. After Starr left the pain management clinic, claimant continued treatment with Dr. Haber, who recommended that claimant consider a spinal cord stimulator trial.

Claimant's attorney submitted a request for employer to expand its acceptance to include "complex regional pain syndrome as a consequence of his industrial injury and accepted finger amputation," which the parties agree constituted a "new or omitted medical condition" claim under ORS 656.267.

At employer's request, claimant submitted to an independent medical examination (IME) by Dr. Button, a hand surgeon. Button reviewed claimant's medical history. Although Button concluded that claimant's symptoms were related to his injury, he disagreed that the symptoms indicated a dysfunction of claimant's sympathetic system. Button stated that he did not believe claimant had "CRPS." Rather, he concluded that claimant had "isolated hypersensitivity from the fingertip amputation." Button did not think that claimant required any further medical treatment and expressed the view that claimant was medically stationary.

Based on Button's report, employer denied claimant's request to accept "complex regional pain syndrome."[1] Claimant requested a hearing to challenge the denial.

While claimant's hearing request was pending, employer arranged for an examination of claimant by Dr. Ochoa, a neurologist. Ochoa conducted a number of tests and reviewed claimant's medical records. Ochoa was skeptical of the diagnoses by Starr and Haber. Ochoa agreed with Button that claimant's symptoms did not reflect any

---

[1] Despite its denial of the claim, employer continued to pay for claimant's medical treatments.

"sympathetic" system dysfunction. Rather, he opined, claimant suffered from "a neuropathic pain syndrome" caused by an organic peripheral nerve injury at the site of the amputation, a condition that he said should be coded as "CRPS II." In short, like Button, Ochoa believed that claimant was experiencing symptoms of an injury to the nerve itself at the site of the amputation.

Haber ultimately deferred to Ochoa's diagnosis and agreed that the treatment approach for CRPS II would be different from the therapy that he and Starr had prescribed. By the time of the hearing, all of the physicians were in agreement that the correct diagnosis for claimant's symptoms was CRPS II.

At the hearing on claimant's challenge to the denial of his new or omitted medical condition claim, employer's counsel explained that there is a significant difference between CRPS/RSD (which Ochoa labeled as "CRPS I" and described as a diagnosis applied to nerve symptoms when there is no nerve injury) and the ultimately diagnosed CRPS II (which involves actual injury to the nerve), and that the two conditions have different medical codes and treatments. Although, by the time of hearing, the diagnosis of CRPS II was not disputed, employer maintained that, in the posture of the claim, the administrative law judge (ALJ) lacked authority to address the compensability of CRPS II, because that condition, which had not been diagnosed at the time claimant filed his new or omitted condition claim, was not encompassed within the claim and, thus, was not encompassed within employer's denial.[2] As a result, in employer's

---

[2] ORS 656.262(6)(d) provides:

"An injured worker who believes that a condition has been incorrectly omitted from a notice of acceptance, or that the notice is otherwise deficient, first must communicate in writing to the insurer or self-insured employer the worker's objections to the notice pursuant to ORS 656.267. The insurer or self-insured employer has 60 days from receipt of the communication from the worker to revise the notice or to make other written clarification in response. A worker who fails to comply with the communication requirements of this paragraph or ORS 656.267 may not allege at any hearing or other proceeding on the claim a de facto denial of a condition based on information in the notice of acceptance from the insurer or self-insured employer. Notwithstanding any other provision of this chapter, the worker may initiate objection to the notice of acceptance at any time."

view, the compensability of CRPS II was not properly before the ALJ.

The ALJ agreed with employer, reasoning that claimant's doctors had abandoned the original diagnosis of CRPS/RSD, on which the new or omitted condition claim for "complex regional pain syndrome" had been based; further, the ALJ concluded, she did not have authority to consider the compensability of CRPS II, because that condition had not been claimed or denied under ORS 656.262(6)(d) or (7)(a).

On claimant's appeal, the board reversed the ALJ, reasoning that claimant's claim was broad enough to

---

ORS 656.262(7)(a) provides:

"After claim acceptance, written notice of acceptance or denial of claims for aggravation or new medical or omitted condition claims properly initiated pursuant to ORS 656.267 shall be furnished to the claimant by the insurer or self-insured employer within 60 days after the insurer or self-insured employer receives written notice of such claims. A worker who fails to comply with the communication requirements of subsection (6) of this section or ORS 656.267 may not allege at any hearing or other proceeding on the claim a de facto denial of a condition based on information in the notice of acceptance from the insurer or self-insured employer."

ORS 656.267 provides:

"(1) To initiate omitted medical condition claims under ORS 656.262 (6)(d) or new medical condition claims under this section, the worker must clearly request formal written acceptance of a new medical condition or an omitted medical condition from the insurer or self-insured employer. A claim for a new medical condition or an omitted condition is not made by the receipt of medical billings, nor by requests for authorization to provide medical services for the new or omitted condition, nor by actually providing such medical services. The insurer or self-insured employer is not required to accept each and every diagnosis or medical condition with particularity, as long as the acceptance tendered reasonably apprises the claimant and the medical providers of the nature of the compensable conditions. Notwithstanding any other provision of this chapter, the worker may initiate a new medical or omitted condition claim at any time.

"(2)(a) Claims properly initiated for new medical conditions and omitted medical conditions related to an initially accepted claim shall be processed pursuant to ORS 656.262.

"(b) If an insurer or self-insured employer denies a claim for a new medical or omitted medical condition, the claimant may request a hearing on the denial pursuant to ORS 656.283.

"(3) Notwithstanding subsection (2) of this section, claims for new medical or omitted medical conditions related to an initially accepted claim that have been determined to be compensable and that were initiated after the rights under ORS 656.273 expired shall be processed as requests for relief under the Workers' Compensation Board's own motion jurisdiction pursuant to ORS 656.278(1)(b)."

encompass the diagnosis of CRPS II. The board further concluded that claimant's CRPS II exists, that it was caused in major part by the work injury, ORS 656.005(7)(a)(A) (setting forth the major contributing cause standard of proof for a consequential condition), and that it was, therefore, compensable. The board awarded claimant his attorney fees and costs under ORS 656.386(1) and (2) for prevailing over employer's denial of the claim. But, reasoning that Button's report had supported a legitimate doubt as to the compensability of claimant's condition, the board declined to assess a penalty under ORS 656.262(11)(a).[3]

On judicial review, employer reiterates the arguments it made before the board. Specifically, employer contends that the pertinent statutes require a claimant seeking acceptance of a new or omitted medical condition to specify the diagnosed condition for which compensation is sought, and the diagnosis controls an employer's processing obligation. Therefore, in this case, because the diagnosis at the time claimant filed his claim ultimately proved to be incorrect, employer's denial was proper. In addition, employer contends that because claimant had not specifically requested acceptance of CRPS II, employer had no obligation to process a claim for that condition; accordingly, employer asserts that its denial did not encompass CRPS II. Finally, citing *SAIF v. Calder*, 157 Or App 224, 227-28, 969 P3d 1050 (1998), for the proposition that the board is not an agency with specialized medical expertise, employer contends that, in concluding that claimant's claim was broad enough to encompass CRPS II, the board made a medical determination that it was not qualified to make.[4]

Claimant responds that the board correctly concluded that his claim for "complex regional pain syndrome" placed at issue the compensability of the ultimate diagnosis of CRPS II, and that that determination was not a medical determination but rather a finding supported by medical

---

[3] ORS 656.262(11)(a) provides for the assessment of a penalty when an employer unreasonably denies a claim. Claimant does not challenge the board's decision not to assess a penalty.

[4] Employer does not contend that, if claimant's claim was broad enough to encompass CRPS II, the board erred in concluding that claimant's CRPS II was compensable.

evidence in the record. Claimant asserts that the board's determination that his claim is compensable is supported by substantial evidence. We agree with both of claimant's contentions.[5]

Substantial evidence supports the board's determination that claimant's new or omitted medical condition claim placed at issue the compensability of the ultimately diagnosed CRPS II. The statutes governing new and omitted condition claims require that a claimant identify and give notice to the employer of the new or omitted condition for which compensation is sought. ORS 656.262(7)(a); ORS 656.267. We have frequently said that the scope of an employer's acceptance or denial of a claim is a question of fact to be reviewed for substantial evidence. *See, e.g., Walker v. Providence Health Systems Oregon*, 267 Or App 87, 107, 340 P3d 91 (2014), *modified on recons*, 269 Or App 404, 344 P3d 1115 (2015); *SAIF v. Dobbs*, 172 Or App 446, 451, 19 P3d 932, *adh'd to on recons*, 173 Or App 599, 23 P3d 987 (2001) (scope of acceptance question of fact). We conclude here that whether a condition is encompassed within a new or omitted condition claim is also a question of fact that we review for substantial evidence. *See Crawford v. SAIF*, 241 Or App 470, 477-78, 250 P3d 965 (2011) (whether a claimant has stated a claim for an omitted condition is a question of fact). Here, the board found that claimant's new or omitted medical condition claim for "complex regional pain syndrome" placed at issue the compensability of the ultimately-diagnosed condition of CRPS II. We agree with claimant that the board's finding is supported by the medical evidence in the record and does not represent a medical determination by the board. There appears to be significant controversy in the medical community, between specialists

---

[5] Claimant further asserts that, apart from any obligation to process a new or omitted condition claim, an employer has an independent and continuing affirmative duty to update its notice of acceptance under ORS 656.262(6)(b)(F) (requiring the employer to modify the notice of acceptance from time to time as medical or other information changes a previously issued notice of closure to respond to conditions identified in the medical reports), and that, after Ochoa made the diagnosis of CRPS II and determined that the condition was related to claimant's work injury, employer should have accepted the claim. In light of our conclusion, we need not address that separate contention offered in support of the board's order.

in pain management and specialists in neurology, concerning the etiology, nomenclature, and therapies for symptoms like claimant's.[6] The label "CRPS" has been applied to claimant's symptoms from the beginning. Claimant's new or omitted medical condition claim, as filed, was for "complex regional pain syndrome." Although CRPS II was not diagnosed until after the claim was filed, a reasonable interpretation of the medical record is that CRPS II is a form of "complex regional pain syndrome."[7] Thus, the board did not err in concluding that the claim encompassed the ultimately-diagnosed condition.

Employer contends that it could not have known that claimant was seeking acceptance of CRPS II at the time of the claim, because that diagnosis had not been made.[8] But ORS 656.262(7)(a) and ORS 656.267 require notice of new medical *conditions*; they do not require notice of *diagnoses*.[9] A particular diagnosis is not required to support

---

[6] The record includes an article written by Ochoa, explaining his conclusions around that controversy:

"There is justified debate around the conceptual, scientific, and clinical definitions of RSD, sympathetically maintained pains, sympathetically independent pains, CRPS, etc. The opposing positions of unconditional advocacy and evidence-based revisionism are irreconcilable in terms of both science and reason. Given the fact that the refutability principle is not applicable to the dogmas on RSD-CRPS, controversy is bound to continue. Debate will be necessary as long as theoretical opinions on this matter remain empirical, and clinical management of patients thus labeled continues to fail and harm."

[7] An article authored by Ochoa and in the record explained that the name given by the International Association for the Study of Pain to the condition suffered by "the compelling classic group of neuropathic pain patients is 'CRPS (Complex Regional Pain Syndrome) Type II,' formerly 'Causalgia.' The atypical non neuropathologically-based condition is denominated CRPS I, formerly 'Reflex Sympathetic Dystrophy.'"

[8] Whether the board could find on the medical record that the diagnosis was encompassed in the claim is a different question from whether employer had a legitimate doubt as to the compensability of the claim at the time of its denial. As we said in *Mills v. The Boeing Co.*, 212 Or App 678, 682, 159 P3d 375 (2007), whether a denial is directed at a particular claim depends on the context in which the denial is made, including what the insurer did or did not know when the denial was made. Based on the medical record at the time of denial, the board concluded that employer could reasonably determine that claimant's new or omitted condition claim for "complex regional pain syndrome" was not a separately compensable condition. As noted, claimant does not challenge that determination.

[9] Nor is an employer required to accept or deny a particular diagnosis. Indeed, ORS 656.262(7)(a) provides that "the insurer or self-insured employer is

the compensability of a work-related condition. *See Boeing Aircraft Co. v. Roy*, 112 Or App 10, 15, 827 P2d 915 (1992) (a claimant need not prove a specific diagnosis if he proves that his symptoms are attributable to work); *Tripp v. Ridge Runner Timber Services*, 89 Or App 355, 358, 749 P2d 586 (1988) (despite diagnostic difficulties, medical evidence attributing claimant's condition to work was sufficient to support compensability). The record in this case shows that, although the medical experts disagreed about the correct diagnosis of claimant's condition, the symptoms underlying the condition—hypersensitivity to mechanical stimuli, stiffness, discoloration, and cold sensitivity—remained constant and provided the basis for claimant's new or omitted medical condition claim for "complex regional pain syndrome." On this record, the board could find that the source of claimant's symptoms, ultimately diagnosed as CRPS II, is the same condition for which claimant originally sought acceptance as "complex regional pain syndrome." We conclude that the board's finding that the claim encompassed the ultimately diagnosed condition of CRPS II is supported by substantial evidence.

Affirmed.

---

not required to accept each and every diagnosis or medical condition with particularity, as long as the acceptance reasonably apprises the claimant and the medical providers of the nature of the compensable conditions."