Argued and submitted June 12, 2015, vacated and remanded October 12, 2016

In the Matter of the Compensation of
David M. Williams, Claimant.

SAIF CORPORATION
and Baker County School District #61,
*Petitioners,*

*v.*

David M. WILLIAMS,
*Respondent.*

Workers' Compensation Board
1200237; A155778

381 P3d 955

David L. Runner argued the cause and filed the briefs for petitioners.

Ronald A. Fontana argued the cause and filed the brief for respondent.

Before DeVore, Presiding Judge, and Garrett, Judge, and Schuman, Senior Judge.

## GARRETT, J.

Petitioners, SAIF Corporation and Baker County School District #61, seek reversal of an order of the Workers' Compensation Board that concluded that claimant had established the compensability of a "new medical or omitted medical condition" under ORS 656.267 for a thoracic spine Tarlov cyst.[1] On review, petitioners contend that the board's analysis is predicated on two factual errors regarding the medical evidence. Claimant concedes one of the errors but argues that any error was harmless. We conclude that the board's opinion does contain two factual assertions that are not supported by the record. We further conclude that those errors could have affected the board's analysis of the claim and are, therefore, not harmless. Accordingly, we vacate the board's order and remand for reconsideration.

We review the board's legal conclusions for legal error and its determinations on factual issues for substantial evidence. *Luton v. Willamette Valley Rehabilitation Center*, 272 Or App 487, 490, 356 P3d 150 (2015). "Substantial evidence exists when the record, viewed as a whole, permits a reasonable person to find as the board did, in the light of supporting and contrary evidence." *State Farm Ins. Co. v. Lyda*, 150 Or App 554, 559, 946 P2d 685 (1997), *rev den*, 327 Or 82 (1998).

Claimant was compensably injured on March 10, 2006, when he fell through some rotting boards while walking on a ramp. He struck the ground, later describing the pain as "like being kicked in the back by a horse." Three days later, he was evaluated at a trauma center and received a diagnosis of a possible T5-6 facet joint fracture. On March 23, 2006, claimant was examined by Dr. Ha, who diagnosed a thoracic strain. SAIF accepted a claim for thoracic strain. In July 2006, Ha found the thoracic strain medically stationary without permanent impairment, although claimant continued to experience severe thoracic symptoms. A July 27, 2006, notice of closure did not award compensation for permanent impairment.

---

[1] As described by the board, a Tarlov cyst is a "'perineural [surrounding a nerve] cyst found in the proximal radicles of the lower spinal cord.'" (Quoting *Stedman's Medical Dictionary* 483 (26th ed 2006) (brackets in board's order).)

Over the next several years, claimant continued to experience thoracic pain and spasms. He sought treatment from at least 16 physicians over a four-and-a-half-year period. Different MRI scans revealed, among other things, mild posterior T7-8 and T8-9 disc protrusions and multiple Tarlov cysts throughout the thoracic spine neural foramina. The largest Tarlov cyst was at T5-6. Claimant also underwent multiple neurological evaluations of his thoracic spine. Several different physicians who treated claimant during that period opined that the Tarlov cyst at the T5 level was likely an "incidental finding" and not causing symptoms.

Based in part on his own internet research, claimant formed the opinion that the Tarlov cysts were the cause of his symptoms. Claimant became aware of Dr. Feigenbaum, a Kansas City physician specializing in the surgical treatment of Tarlov cysts. In late 2009, claimant contacted Feigenbaum and sent him his medical records. Feigenbaum agreed to accept claimant as a patient and a candidate for surgery, provided that claimant first obtain an evaluation confirming the existence of symptoms that Feigenbaum "wanted to see" in the T5 dermatome. In May 2010, claimant was treated at Oregon Health & Science University (OHSU), where claimant reported symptoms in the T5 dermatome (specifically, mid-back pain with "intermittent radiation around chest into xyphoid just below nipples"). OHSU physicians recommended "trigger points injections" into the rhomboid muscles, which claimant received on August 9, 2010. As a result of those injections, claimant experienced seven-and-a-half hours of relief, which, according to claimant, was a "major breakthrough."

Claimant communicated with Feigenbaum in October 2010, reporting that he had documentation of symptoms in the T5 dermatome and that the injections he had received had temporarily relieved his symptoms. According to the board's opinion and order, "Dr. Feigenbaum examined claimant in October 2010, opining that the T5 Tarlov cyst was responsible, at least in part, for his thoracic symptoms, and recommend[ed] surgery." It is undisputed on appeal that that statement by the board was erroneous; Feigenbaum did no such examination in October 2010, and apparently never performed a neurological examination to confirm

the presence of symptoms in the T5 dermatome. Rather, Feigenbaum's agreement to perform surgery on claimant was apparently based on Feigenbaum's review of claimant's imaging studies and telephone conversations with claimant, who reported symptoms in the T5 dermatome and that the injections had provided some relief.

In November 2010, Feigenbaum operated on claimant and performed a left T5 laminectomy and treatment of a left T5 meningeal (Tarlov) cyst. After the surgery, claimant's symptoms almost completely resolved. Feigenbaum opined that the March 2006 work injury caused the T5 Tarlov cyst to become symptomatic and require treatment. Claimant filed a claim for the T5 Tarlov cyst condition.

At SAIF's request, claimant was examined by Dr. Rosenbaum and his medical records were reviewed by Dr. Sabahi; both doctors opined that the Tarlov cyst was not caused by the 2006 work injury and not likely the cause of claimant's symptoms. Their opinions both noted that claimant had experienced a recurrence of similar symptoms after the surgery, following an incident in which claimant stepped in a hole while walking across a field. SAIF denied the T5 Tarlov cyst claim. An administrative law judge (ALJ) set aside SAIF's denial, finding the claim compensable based in part on a determination that Feigenbaum's opinion was more persuasive than those of Rosenbaum and Sabahi. SAIF appealed to the board, which affirmed the ALJ's order setting aside SAIF's denial, with one member dissenting.

In its order, the board explained that it viewed Feigenbaum's opinion as more persuasive than those of Rosenbaum or Sabahi. The board placed heavy reliance on the fact that Feigenbaum had actually operated on claimant, noting that "a physician who performs surgery on an injured body part may be in a better position to evaluate the injury or disease than other medical experts." In addition, the board refuted the argument that claimant's symptoms might have had a different cause by pointing out that claimant's symptoms "did not abate until his November 2010 Tarlov cyst surgery." Specifically with regard to the reasons for discounting Rosenbaum's opinion, the board observed:

> "Moreover, Dr. Rosenbaum reasoned that if claimant's T5 cyst was symptomatic, he would have expected to find 'pain located at that level and radiating to the anterior chest.' Yet, claimant has exhibited such symptoms on numerous occasions since his March 2006 injury. For example, Dr. Ha, who first treated claimant less than two weeks after the March 2006 injury, noted severe pain in his thoracic region, and off to the left between his interscapular region, with accompanying muscle spasms. Dr. Ha continued to document thoracic muscle pain and spasms, reporting in August 200[6][2] 'objective findings demonstrate pain in the thoracic region that radiates both proximally and distally.'"

(Citations omitted.)

The dissenting board member concluded that Feigenbaum's causation opinion was inadequate to support the compensability of claimant's T5 Tarlov cyst claim. The dissent noted that Feigenbaum's statement that it is "common for Tarlov cysts to become symptomatic after a traumatic event" was "general in nature, and does not explain how the mechanics of claimant's particular injury caused, or contributed to, his disability/need for treatment of the Tarlov cyst. As such, it is conclusory, and therefore, unpersuasive." The dissent also took issue with the board majority's view of the evidence regarding claimant's symptoms:

> "Dr. Feigenbaum assumed a close temporal relationship between claimant's work injury and the onset of symptoms radiating into his chest that signified the T5 nerve root involvement. Yet, claimant did not report any symptoms radiating into his chest until May 2010, four years after his injury.

> "The ALJ relied on an August 2006 report by Dr. Ha, stating that claimant had pain in the thoracic region that 'radiated both proximally and distally,' as evidence of symptoms radiating into claimant's chest. Dr. Ha stated on the same occasion, however, that claimant was neurologically intact. Dr. Ha previously made the same findings in May 2006. Furthermore, other physicians explicitly assessed claimant's 2006 and 2007 symptoms as *not* radiating

---

[2] In its order, the board mistakenly states that the examination with Ha took place in August 2008. That misstatement appears to be a scrivener's error.

around his chest. In contrast, a neurologist's 2010 note specifically described symptoms 'radiating around the chest *** just below the nipples.' Without further detail, it is not proper to infer from Dr. Ha's reports that claimant developed symptoms consistent with the T5 nerve root compression as early as May or August 2006."

(Emphasis in original; citations omitted.)

On appeal, in a single assignment of error, petitioners argue that the board made two factual errors and "exceeded its limited statutory role as a lay fact-finder." The two factual errors identified by petitioners are (1) the board's statement that Feigenbaum personally examined claimant a month before the surgery and opined on the basis thereof that claimant was experiencing symptoms caused by the T5 Tarlov cyst and (2) the board's finding that Ha had made findings of symptoms in the T5 dermatome as early as March 2006, shortly after claimant's injury. As to the latter, petitioners argue (echoing the dissenting board member) that Ha observed only "pain in the thoracic region that radiates both proximally and distally" and made no finding specific to the T5 dermatome; the board consequently erred when it characterized his reports as supporting the existence of T5 symptoms.

As to the Feigenbaum issue, claimant concedes that the board's statement was erroneous and that Feigenbaum did not personally examine claimant for the purpose of diagnosis or confirmation of symptoms in the T5 dermatome.[3] Claimant contends, however, that that factual error was harmless in light of the board's stated reasons for finding Feigenbaum's opinion more persuasive—namely, Feigenbaum's expertise with Tarlov cysts, claimant's history of pain and symptoms, the fact that Feigenbaum was the operating physician, and the evident success of the operation.

As for the second asserted error, claimant argues that the board's order did no more than repeat Ha's words, and that the board consequently did not err by making its

---

[3] We reject without discussion claimant's argument that petitioners failed to preserve for judicial review the issues raised by this appeal.

own medical conclusions about causation. Claimant also argues that any error was harmless in light of the other evidence supporting compensability.

ORS 656.267[4] sets out the process by which a claimant may initiate a claim for a new or omitted medical condition. The claimant bears the burden of proving the existence and compensability of a new or omitted condition by a preponderance of the medical evidence. *See* ORS 656.266(1) (the burden of proving compensability of an injury or occupational disease is on the claimant); *De Los-Santos v. Si Pac Enterprises, Inc.*, 278 Or App 254, 257, 373 P3d 1274, *rev den*, 360 Or 422 (2016) ("[T]he legislature intended that a claimant would bear the burden of proving the existence of a claimed new or omitted condition in the context of a claim under ORS 656.267[.]"); *SAIF v. Alton*, 171 Or App 491, 497, 16 P3d 525 (2000) ("The claimant must meet his or her burden [of proving compensability] by a preponderance of the medical evidence."). In cases where a claimant's injuries require "skilled and professional persons to establish causation," expert medical evidence is necessary for a claimant to meet his or her burden of proof. *Barnett v. SAIF*, 122 Or App 279, 282, 857 P2d 228 (1993). On review of the board's evaluation of expert opinions, "we do not substitute our judgment for that of the board; rather, we determine whether the board's evaluation of that evidence was reasonable." *SAIF v. Pepperling*, 237 Or App 79, 85, 238 P3d 1013 (2010).

To begin with, we agree that the board's order suffers from the deficiencies asserted by petitioners. It is

---

[4] ORS 656.267(1) provides:

"To initiate omitted medical condition claims under ORS 656.262 (6)(d) or new medical condition claims under this section, the worker must clearly request formal written acceptance of a new medical condition or an omitted medical condition from the insurer or self-insured employer. A claim for a new medical condition or an omitted condition is not made by the receipt of medical billings, nor by requests for authorization to provide medical services for the new or omitted condition, nor by actually providing such medical services. The insurer or self-insured employer is not required to accept each and every diagnosis or medical condition with particularity, as long as the acceptance tendered reasonably apprises the claimant and the medical providers of the nature of the compensable conditions. Notwithstanding any other provision of this chapter, the worker may initiate a new medical or omitted condition claim at any time."

undisputed that, contrary to the statement in the board's order, Feigenbaum did not personally examine claimant in October 2010 when he opined that the T5 Tarlov cyst was responsible for claimant's symptoms. Rather, Feigenbaum's opinion was based on his review of claimant's medical records as well as telephone conversations with claimant regarding his symptoms. Accordingly, the board made a factual error when it stated that Feigenbaum had conducted a presurgery examination of claimant in October 2010.

The issue regarding Ha's report is somewhat closer, but on balance, we agree with petitioners that the board appears to have found something in Ha's report that is not present. Again, the relevant reference is as follows:

> "Moreover, Dr. Rosenbaum reasoned that if claimant's T5 cyst was symptomatic, he would have expected to find 'pain located at that level and radiating to the anterior chest.' Yet, claimant has experienced such symptoms on numerous occasions since his March 2006 injury. For example, Dr. Ha, who first treated claimant less than two weeks after the March 2006 injury, noted severe pain in his thoracic region, and off to the left between his interscapular region, with accompanying muscle spasms. Dr. Ha continued to document thoracic muscle pain and spasms, reporting in August 200[6] 'objective findings demonstrate pain in the thoracic region that radiates both proximally and distally.'"

(Citations omitted.) Claimant argues that that excerpt from the board's order simply quotes Ha's own report. Read in context, however, the excerpt cites Ha's reports as support for the assertion that "claimant has experienced *such symptoms* on numerous occasions since his March 2006 injury" (emphasis added). The phrase "such symptoms," in turn, refers back to "pain located at [the T5] level and radiating to the anterior chest" in the first sentence of the paragraph. Thus, the board identified Ha's reports as evidence that claimant had experienced symptoms *at T5 and radiating to the anterior chest* as early as two weeks after the work injury. Ha's reports, however, do not support that assertion.

In his first report, dated March 23, 2006, Ha describes claimant's pain as located in the "thoracic region and off to the left in between his interscapular area."

A physical examination conducted that day confirmed "extreme tenderness in between the interscapular area off to the left *at approximately the T7-T8 level*." (Emphasis added.) The second cited report, dated August 2006, states: "Objective findings demonstrate pain in the thoracic region that radiates both proximally and distally, and neurologically [claimant] is intact." The report ends with Ha's opinion that claimant "is currently medically stationary" and that no further follow up was required. Notably absent from either report is any reference to symptoms at the T5 level, or pain that radiates to "the anterior chest." Nevertheless, relying on those reports, the board found that claimant had experienced "such symptoms" as early as two weeks after his injury. Although it is undisputed that claimant *eventually* reported such symptoms in 2010 (as documented during claimant's May 2010 visit to OHSU), the board's finding that he did so starting two weeks after his injury is not supported by Ha's reports, and is therefore not supported by substantial evidence. *See Alton*, 171 Or App at 502 n 6 ("[I]n the workers' compensation area, the legislature expressly requires compensability and extent determinations to be made based on *preponderant medical* evidence. To meet that standard, a medical opinion must be expressed by the medical expert, even if less-than-artfully, rather than divined by the factfinder." (Emphasis in original.)).

Having concluded that the board made the errors discussed above, we must address whether they require remand. As noted, claimant contends that any error was harmless in light of the other evidence in the record. Specifically, claimant argues that the board's mistake as to his exam with Feigenbaum is insignificant because Feigenbaum eventually examined claimant prior to operating on his cyst. Claimant also argues that substantial evidence in the record supports the board's finding that claimant consistently experienced symptoms at the T5 level from the time of his injury.

Under these circumstances, we are not persuaded that the board's factual errors were harmless. The board's decision essentially reduced to a credibility contest between Feigenbaum and SAIF's experts, Rosenbaum and Sabahi; the board found Feigenbaum's opinion to be more persuasive.

However, as noted, the board reached its conclusion on the basis of two errors. First, in discounting Rosenbaum's opinion, the board expressly relied on its determination that claimant, within weeks of his injury, *had exhibited* the symptoms that Rosenbaum said he would have expected to see if claimant's T5 cyst had been symptomatic—"pain located at [the T5 level] and radiating to the anterior chest." As explained above, that determination is not supported by the evidence that the board cited. Second, the board erroneously believed that Feigenbaum had personally examined claimant to confirm the presence of symptoms in the T5 dermatome prior to the surgery. In light of the contested medical evidence in the record, it is at least plausible that the board's misstatement affected the board's decision to credit Feigenbaum's opinion over that of Sabahi's. Because it is not possible for us to determine to what extent the errors discussed above affected the board's decision, we remand to the board for reconsideration. *See SAIF v. Calder*, 157 Or App 224, 228, 969 P2d 1050 (1998) (remanding to the board because it was not possible to know "to what extent the [b]oard's reliance on its [unsubstantiated] finding affected its determination of claimant's award"); *Driver v. Rod & Reel Restaurant*, 125 Or App 661, 665, 866 P2d 512 (1994) (remanding for reconsideration where we could not discern whether the board would have reached the same conclusion "but for its erroneous conclusion that a physical therapist is not a 'physician'"); *Skochenko v. Weyerhaeuser Co.*, 118 Or App 241, 245, 846 P2d 1212 (1993) ("[W]e cannot say that the [b]oard's misinterpretation of some of the medical evidence did not influence its ultimate conclusion *** . Accordingly, we must reverse and remand for reconsideration."); *Asten-Hill Co. v. Armstrong*, 100 Or App 559, 563, 787 P2d 890 (1990) ("Because of [the board's] misstatement [of expert testimony], we cannot say whether there is substantial evidence to support the [b]oard's conclusion on compensability.").

Vacated and remanded.